---
Williams *v.* Williams.
---

---

EMILY D. WILLIAMS *et al. v.* J. MINNICK WILLIAMS *et al.*

1. TRUST FUNDS. *Investment of in the payment of real estate.* In 1866, W. conveyed a tract of land to his wife and children, as follows: "For her sole and separate use and benefit together with his children, free from his debts and contracts, she to have control of the property, and in the event of her death before his own, the property was to revert to him in trust for his children." Under a decree of court this land was sold and proceeds invested in part payment for a tract of land bought by W. in another county, and to be held as the first tract was. A lien was reserved by the vendor on this latter tract, and on failure to pay the last note it was sold, bringing several thousand dollars more than the last note. Complainants file their bill claiming that they are entitled to be repaid the trust funds invested, before the vendor can enforce his lien. *Held,* that they have no prior equity to the vendor and must allow him to enforce his lien.

2. SAME. *Distribution of surplus where trust funds were invested in part payment of land.* Where trust funds are invested in land subject to a lien, and the lien is enforced, the land being sold, the surplus, after paying off the lien debt, stands in place of the land, and the rights of the parties in it are the same as they were in the land, and surplus must be distributed in proportion to the amount of trust funds and the value of the land originally.

3. CONSTRUCTION OF DEED. *Conveyance for benefit of wife and children.*
Where a tract of land is conveyed to the wife "for her sole and sep-
arate use and benefit, together with her children, she to have control
of the property, and in the event of her death before his (the hus-
band's), the property to revert to him in trust for his children," the
wife takes a life estate for herself with a trust in favor of the chil-
dren jointly with her during life, with remainder to the children
after her death, the husband, if surviving, taking the legal estate for
benefit of children.

4. MORTGAGE BY WIFE OF LIFE ESTATE HELD FOR HERSELF AND
CHILDREN. Where wife holding a life estate in land for herself
with a trust in favor of children jointly with her during life, with
remainder to children after her death, gives a mortgage on the prop-
erty and the land is sold, the mortgagee is entitled to the value of
the wife's life estate; the remainder belongs to the children.

FROM MAURY.

Appeal from the Chancery Court at Columbia.    W.
S. FLEMING, Ch.

COOPER & STOCKELL for complainants.

BARNETT & HUGHES for defendants.

FREEMAN, J., delivered the opinion of the court.

The facts on which this case must turn are sub-
stantially as follows: In 1866, J. Minnick Williams,
the husband, conveyed about six acres of land in Edge-
field, Davidson county, to his wife and use of his
children, as follows, for her sole and separate use and
benefit, together with his children, free from his debts
and contracts; she to have control of the property,
and in the event of her death before his own, the
property was to revert to him in trust for his chil-
dren. He only had two children at that date.

One Granville Pillow had executed a deed of trust, in Maury county, conveying a tract of land of upwards of 500 acres, to James H. Thomas, trustee, for the payment of a large indebtedness of said Pillow. A bill was filed by said Thomas to administer said trust in the chancery court at Columbia, Tennessee, and a decree had for a sale of the land conveyed to him, Thomas being appointed commissioner to make said sale, with authority to sell privately. He sold said land to J. Minnick Williams, at the price of about $40,000, Williams paying $10,000 cash and giving his three notes, due one, two and three years, for balance. This sale was reported to the chancery court and regularly confirmed.

October, 1868, Williams and wife filed a bill in the chancery court of Davidson county for a sale of the Edgefield land, to which their children, then numbering three, were parties, and represented by a guardian *ad litem*, who filed an answer for them.

The purpose of this bill was a sale, and specifically seeking a reinvestment of the proceeds in the land purchased by the father in Maury county, stating the fact that the Maury county lands had not been paid for, but that such investment would be manifestly to the interest of all parties, giving as reasons, that the Edgefield property yielded no income, was heavily taxed, and Williams, the father, was a farmer, and without income save from his farm, and did not wish to continue the burden of holding the Edgefield land and paying taxes thereon from his own purse.

By a decree of that court proof was ordered to

be taken as to the advisability of the sale and investment as prayed for, the master to report the result. The Maury county lands were shown by the testimony on this inquiry to be a valuable and safe investment at that time, and estimated to be worth from $60,000 to $65,000. On favorable report by the master, the land was ordered sold as prayed for. It was added, "and the court doth expressly order and decree, that the proceeds of such sale, after paying the costs and expenses, shall be vested in the farm in Maury county, and shall be impressed with the same trusts as now appertain to the said tract of six acres, and in that position shall continue to be held as said land is now held for the benefit of complainant, Emily D., and said defendants, to-wit—the three children, parties to the proceedings." Williams became the purchaser at the master's sale at the sum of $6,675, paying the money into court, whereupon the title was regularly vested in him by decree confirming the sale. The land was ordered in this case to be sold on one and two years, but the father paid it all at once, *evidently* with the purpose of facilitating the investment sought.

It was then ordered that the master apply the money to the payment of so much of the purchase money as it would discharge of the Maury county lands, and report his action to some future day of the court. On May 25, 1870, the master reported that he had paid the entire sum of $6,675 to James H. Thomas, and filed his receipt for the same as follows:

Received of Morton B. Howell, clerk and master of the chancery court at Nashville, $6,675, being the proceeds of a sale of a piece of real estate in Edgefield, lately the property of the wife and children of J. Minnick Williams, and purchased by said Williams, under a decree in said suit, in payment of so much of the purchase money of a tract of land in Maury county, Tennessee, bought of me by the said J. Minnick Williams, and on which he now resides, and which said sum so paid to me has been ordered, as I understand, by said court to be vested in said land for the use and benefit of the wife and children of said Williams.

    [Signed.]                           JAMES H. THOMAS,
                                *Special Commissioner Chancery Court.*

Without noticing at present several other transactions and proceedings connected with these parties and the properties we have mentioned, it suffices to say, that after this investment thus made, the purchase money due by the father on the Maury county lands was paid, except the last note, on which a judgment was had in the chancery court, under which the land was about to be sold, at the filing of the present bill, to enforce the vendor's lien for the purchase money retained at the sale at which Williams had purchased. The land, as we learn from the record, has since been sold and purchased by the owner at the time of this judgment, Van Leer Polk, at $18,000, some several thousand dollars more than his judgment.

This bill is filed, stating substantially these facts, seeking to have the $6,675, paid into the land by the order of the chancery court, paid back to complainants out of the land, maintaining that complainants have a superior equity to have this sum paid them out of the Maury county land to the owner of the vendor's lien, existent and fixed at the date when the money was paid to Thomas, and well understood to exist by all parties at the time the investment was ordered, as

well as when actually made.    We have carefully read
the bill and looked at the facts as they appear in
the record, and can find no possible ground on which
this equity can stand.    In fact, we suspect the learned
draftsman of the bill found it difficult to arrive at a
definite basis on which to rest this claim, as much of
the bill is made up of general statements, showing how
complainants would be deprived of their only property
if the relief sought can not be had.

We proceed summarily to state our conclusions on
this feature of the case.    It is beyond question, and
so admitted in argument, that the relief sought can
only be had on the basis that the fund arising from
the sale of the Edgefield land was a trust fund, and
that the parties against whom the relief is sought,
have been participants in some fraudulent or unauthor-
ized conduct with said fund, or stand in the shoes
of some one guilty of such conduct, and so are bound
by reason of this to respond to the equity claimed.
It may be conceded, for the argument, that Polk stands
in the shoes of Thomas, the commissioner, as to his
judgment on the last purchase money note for the
Maury county lands, but what equity these parties
could possibly have had against Thomas, were he en-
forcing that judgment, we are unable to see.

The chancery court of Davidson county, having ju-
risdiction of the person and subject matter, ordered
the sale of the Edgefield property specifically for the
investment which was made.    It was made with all
the facts before the court, and the report made of
the investment regularly confirmed by the court.    It

is futile to say, that it was but an investment in the note held by Thomas. The whole purpose was to invest in the land, and this is what was done. Thomas was guilty of no breach of any trust when he received the money from the clerk and master of the chancery court of Davidson county. The decree of that court was ample authority for the investment. This turns out to have been a most improvident investment on the part of the chancery court of a fund belonging to a married woman, but while that decree remains in full force and effect, unreversed and unappealed from, it stands a complete justification, as a matter of law, for all that has been done. In the light of the facts as shown to the court, it appeared to be a proper investment, and no subsequent changes can invalidate what has been done. All that can be said of this transaction is, that it was unfortunate, but is now, as far as we can see, irreparable.

It is argued, these parties are entitled to be subrogated to the rights of certain creditors, whose debts are claimed to have been discharged by Thomas, as provided under the trust deed, and for the payment of which the land had been conveyed to him as trustee. We need only say, that no such equity can possibly arise on the facts of this case. The money was not paid to Thomas to discharge any particular debt secured by that trust, even if it could be shown, as is doubtful, that this particular money was appropriated to any specific debt. It was simply what was directed by the chancery court, an investment in the Maury county land, by paying a portion of its price, which was

credited on Williams' note, then due, for it. Had he paid the balance due, these parties would have secured an interest in the land in the proportion the money thus paid bore to its whole price. That would have been all of it. As it has been swept away by a prior lien, they must submit to it.

The only other question necessary to be noticed, is as to the surplus of several thousand dollars left after discharging the judgment owned by Polk. It is the case of parties owning land, in different proportions, subject to a prior lien. That lien has been enforced and the debt secured satisfied, leaving a surplus. That surplus stands in the place of the land, and their rights in it are precisely what they would have been in the land.

The wife, however, in this case, is shown to have joined her husband in a mortgage of the Maury county lands, by which she conveyed "all the claim or right of estate of whatever kind in said tract of land," which she had at the time, to-wit, in January, 1871. This was after the passage of the act of 1869 and 1870, chapter 99 (Thompson & Steger's Code, section 2486, *a, b, c*), authorizing a married woman to convey her separate estate, provided the power of disposition is not expressly withheld in the deed or will under which she holds the property. This mortgage has been enforced and her rights cut off in this land. See *Mulloy* v. *Clapp*, 2 Lea, 586.

What interest did the mother and children take under this deed? We have most wisely abandoned technical rules in the construction of conveyances in

this State, and look to the intention of the instrument alone for our guide, that intention to be arrived at from the language of the instrument read in the, light of the surrounding circumstances. Under this rule, if the conveyance had been simply to the wife and children, under the case of *Beecher* v. *Hicks,* 7 Lea, 209, *et seq.,* and authorities cited by Judge Cooper, we would have no difficulty in holding the wife and children took the entire estate, the children, as the direct objects of the bounty of the conveyor, effectuating this intention, as said in that case, by treating the mother as trustee for the children, or as holding the estate in trust for herself and children, or as giving her life estate with remainder to the children.

This conveyance, however, is not in these terms, but is to his wife " for her sole and separate use and benefit, together with her children; she to have control of the property, and in the event of her death before his (that is the husband), the property to revert to him in trust for his children."

Does not this give a life estate in the wife in trust for herself and children, that is, as joint beneficiaries during the life of the wife, and then remainder as a beneficial interest to the children, the husband to hold the legal title in trust for the children after her death? It is seen the precise estate conveyed is to revert on her death to the husband, to be held under this trust for the children. The fair construction of the language of the instrument is, that the wife took a life estate for herself, with a trust in favor of the children jointly with her during

life, with remainder to the children after her death, the husband, if surviving, taking the legal estate for benefit of the children of the marriage.

The result would be, that as to this fund, the wife and children had an interest in the Maury county lands in the proportion that $6,675 bears to $40,000, the whole price of the land. When this is ascertained, then ascertain the value of the life estate of the wife for life which Polk gets by his purchase at the mortgage sale. This leaves the basis to ascertain the proportion of the children, and balance went to the father, and this interest of the father goes to Polk, as purchaser of his interest in the mortgage. A decree will be drawn in accord with this opinion. The costs of this and the court below will be paid out of the fund.