B. WALTER ERNST et ux., Complainants-Appellees, v.
A. K. CONDITT, Defendant-Appellant. —390 S.W.(2d)
703.

Middle Section.   December 4, 1964.

Certiorari Denied by Supreme Court May 3, 1965.

329

William C. Wilson, Nashville, Parker, Robinson, Christian & Wilson, Nashville, of counsel, for defendant-appellant.

Ed R. Davies, Nashville, Boult, Hunt, Cummings & Conners, Nashville, of counsel for complainants-appellees.

CHATTIN, J.  Complainants, B. Walter Ernst and wife, Emily Ernst, leased a certain tract of land in Davidson County, Tennessee, to Frank D. Rogers on June 18, 1960, for a term of one year and seven days, commencing on June 23, 1960.

Rogers went into possession of the property and constructed an asphalt race track and enclosed the premises with a fence. He also constructed other improvements thereon such as floodlights for use in the operation of a Go-Cart track.

We quote those paragraphs of the lease pertinent to the question for consideration in this controversy:

"3. Lessee covenants to pay as rent for said leased premises the sum of $4,200 per annum, payable at the rate of $350 per month or 15% of all gross receipts, whether from sales or services occurring on the leased premises, whichever is the larger amount. The gross receipts shall be computed on a quarterly basis and if any amount in addition to the $350 per month is due, such payment shall be made immediately after the quarterly computation. All payments shall be payable to the office of Lessors' agent, Guaranty Mortgage Company, at 316 Union Street, Nashville, Tennessee, on the first day of each month in advance. Lessee shall have the first right of refusal in the event Lessors desire to lease said premises for a period of time commencing immediately after the termination date hereof.

\*     \*     \*     \*     \*     \*

"5. Lessee shall have no right to assign or sublet the leased premises without prior written approval of Lessors. In the event of any assignment or sublease, Lessee is still liable to perform the covenants of this lease, including the covenant to pay rent, and nothing herein shall be construed as releasing Lessee from his liabilities and obligations hereunder.

*　*　*　*　*　*

"9. Lessee agrees that upon termination of this contract, or any extensions or renewals thereof, that all improvements above the ground will be moved at Lessee's expense and the property cleared. This shall not be construed as removing or digging up any surface paving; but if any pits or holes are dug, they shall be leveled at Lessors' request."

Rogers operated the business for a short time. In July, 1960, he entered into negotiations with the defendant, A. K. Conditt, for the sale of the business to him. During these negotiations, the question of the term of the lease arose. Defendant desired a two-year lease of the property. He and Rogers went to the home of complainants and negotiated an extension of the term of the lease which resulted in the following amendment to the lease, and the sublease or assignment of the lease as amended to Conditt by Rogers.:

"By mutual consent of the parties, the lease executed the 18th day of June 1960, between B. Walter Ernst and wife, Emily H. Ernst, as Lessors, and Frank G. Rogers as Lessee, is amended as follows:

"1. Paragraph 2 of said lease is amended so as to provide that the term will end July 31, 1962 and not June 30, 1961.

"2. The minimum rent of $350 per month called for in paragraph 3 of said lease shall be payable by the month and the percentage rental called for by said lease shall be payable on the first day of the month following the month for which the percentage is computed. In computing gross receipts, no deduction or credit shall be given the Lessee for the payment of

sales taxes or any other assessments by governmental agencies.

"3. Lessee agrees that on or prior to April 1, 1961, the portion of the property covered by this lease, consisting of about one acre, which is not presently devoted to business purposes will be used for business purposes and the percentage rent called for by paragraph 3 of the original lease will be paid on the gross receipts derived therefrom. In the event of the failure of the Lessee to devote the balance of said property to a business purpose on or before April 1, 1961, then this lease shall terminate as to such portion of the property.

"4. Lessee agrees to save the Lessor harmless for any damage to the property of the Lessor, whether included in this lease or not, which results from the use of the leased property by the Lessee or its customers or invitees. Lessee will erect or cause to be erected four (4) 'No Parking' signs on the adjoining property of the Lessor not leased by it.

"5. Lessor hereby consents to the subletting of the premises to A. K. Conditt, but upon the express condition and understanding that the original Lessee, Frank D. Rogers, will remain personally liable for the faithful performance of all the terms and conditions of the original lease and of this amendment to the original lease.

"Except as modified by this amendment, all terms and conditions of the original lease dated the 18th day of June, 1960, by and between the parties shall remain in full force and effect.

"In witness whereof the parties have executed this amendment to lease on this the 4 day of August, 1960.

> B. Walter Ernst
> Emily H. Ernest
> Lessors

> Frank D. Rogers
> Lessee

"For value received and in consideration of the promise to faithfully perform all conditions of the within lease as amended, I hereby sublet the premises to A. K. Conditt upon the understanding that I will individually remain liable for the performance of the lease.

"This 4 day of Aug, 1960.

> Frank D. Rogers
> Frank D. Rogers

"The foregoing subletting of the premises is accepted, this the 4 day of Aug, 1960.

> A. K. Conditt
> A. K. Conditt."

Conditt operated the Go-Cart track from August until November, 1960. He paid the rent for the months of August, September and October, 1960, directly to complainants. In December, 1960, complainants contacted defendant with reference to the November rent and at that time defendant stated he had been advised he was not liable to them for rent. However, defendant paid the basic monthly rental of $350.00 to complainants in June, 1961. This was the final payment received by complainants during the term of the lease as amended. The record is not clear whether defendant continued to operate the

business after the last payment of rent or abandoned it. Defendant, however, remained in possession of the property until the expiration of the leasehold.

On July 10, 1962, complainants, through their Attorneys, notified Conditt by letter the lease would expire as of midnight July 31, 1962; and they were demanding a settlement of the past due rent and unless the improvements on the property were removed by him as provided in paragraph 9 of the original lease; then, in that event, they would have same removed at his expense. Defendant did not reply to this demand.

On August 1, 1962, complainants filed their bill in this cause seeking a recovery of $2,404.58 which they alleged was the balance due on the basic rent of $350.00 per month for the first year of the lease and the sum of $4,200.00, the basic rent for the second year, and the further sum necessary for the removal of the improvements constructed on the property.

The theory of the bill is that the agreement between Rogers, the original lessee, and the defendant, Conditt, is an assignment of the lease; and, therefore, defendant is directly and primarily liable to complainants.

The defendant by his answer insists the agreement between Rogers and himself is a sublease and therefore Rogers is directly and primarily liable to complainants.

The Chancellor heard the matter on the depositions of both complainants and three other witnesses offered in behalf of complainants and documentary evidence filed in the record. The defendant did not testify nor did he offer any evidence in his behalf.

The Chancellor found the instrument to be an assignment. A decree was entered sustaining the bill and enter-

ing judgment for complainants in the sum of $6,904.58 against defendant.

Defendant has appealed to this Court and has assigned errors insisting the Chancellor erred in failing to hold the instrument to be a sublease rather than an assignment.

To support his theory the instrument is a sublease, the defendant insists the amendment to the lease entered into between Rogers and complainants was for the express purpose of extending the term of the lease and obtaining the consent of the lessors to a "subletting" of the premises to defendant. That by the use of the words "sublet" and "subletting" no other construction can be placed on the amendment and the agreement of Rogers and the acceptance of defendant attached thereto.

Further since complainants agreed to the subletting of the premises to defendant "upon the express condition and understanding that the original lessee, Frank D. Rogers, will remain personally liable for the faithful performance of all the terms and conditions of the original lease and this amendment to the original lease," no construction can be placed upon this language other than it was the intention of complainants to hold Rogers primarily liable for the performance of the original lease and the amendment thereto. And, therefore, Rogers, for his own protection, would have the implied right to re-enter and perform the lease in the event of a default on the part of the defendant. This being true, Rogers retained a reversionary interest in the property sufficient to satisfy the legal distinction between a sublease and an assignment of a lease.

It is then urged the following rules of construction of written instruments support the above argument:

"Where words or terms having a definite legal meaning and effect are knowingly used in a written instrument the parties thereto will be presumed to have intended such words or terms to have their proper legal meaning and effect, in the absence of any contrary intention appearing in the instrument." 12 Am. Jur., Contracts, Section 238.

"Technical terms or words of art will be given their technical meaning unless the context, or local usage shows a contrary intention." 3 Williston on Contracts, Section 68, Sub S. 2.

As stated in complainants' brief, the liability of defendant to complainants depends upon whether the transfer of the leasehold interest in the premises from Rogers is an assignment of the lease or a sublease. If the transfer is a sublease, no privity of contract exists between complainants and defendant; and, therefore, defendant could not be liable to complainants on the covenant to pay rent and the expense of the removal of the improvements. But, if the transfer is an assignment of the lease, privity of contract does exist between complainants and defendant; and defendant would be liable directly and primarily for the amount of the judgment. Brummitt Tire Company v. Sinclair Refining Company, 18 Tenn.App. 270, 75 S.W. (2d) 1022; Commercial Club v. Epperson, 15 Tenn.App. 649.

■■ The general rule as to the distinction between an assignment of a lease and a sublease is an assignment conveys the whole term, leaving no interest nor reversionary interest in the grantor or assignor. Whereas, a sublease may be generally defined as a transaction whereby a tenant grants an interest in the leased premises less

than his own, or reserves to himself a reversionary interest in the term.

The common law distinction between an assignment of a lease and a sublease is succinctly stated in the case of Jaber v. Miller, 219 Ark. 59, 239 S.W.(2d) 760:

"If the instrument purports to transfer the lessee's estate for the entire remainder of his term it is an assignment, regardless of its form or of the parties' intention. Conversely, if the instrument purports to transfer the lessee's estate for less than the entire term—even for a day less—it is a sublease, regardless of its form or of the parties' intention."

The modern rule which has been adopted in this State for construing written instruments is stated in the case of City of Nashville v. Lawrence, 153 Tenn. 606, 284 S.W. 882:

"The cardinal rule to be followed in this state, in construing deeds and other written instruments, is to ascertain the intention of the parties."

In Williams v. Williams, 84 Tenn. 164, 171, it was said:

"We have most wisely abandoned technical rules in the construction of conveyances in this State, and look to the intention of the instrument alone for our guide, that intention to be arrived at from the language of the instrument read in the light of the surrounding circumstances."

In the case of Commerce Street Company v. Goodyear Tire & Rubber Company, 31 Tenn.App. 314, 215 S.W. (2d) 4, this Court said:

"It is the duty of the court in the construction of contracts to ascertain the intention of the contracting

parties, understand what they meant by the contract, and give effect to such understanding and meaning. All other rules of construction are only aids or helps in establishing the intention of the parties and their mutual understanding of the meaning of their contract.

"The motives which induced the contract have a definite bearing upon the intention of the parties. The object and purpose to be effected furnish valuable aids in ascertaining such intention. McNairy v. Thompson, 33 Tenn. 141, 142; Nashville & N. W. R. Co. v. Jones, 42 Tenn. 574; Taylor v. Neblett, 51 Tenn. 491; Mills v. Faris, 59 Tenn. 451; Nunnelly v. Warner Iron Co., 94 Tenn. 282, 29 S.W. 124; Perkins Oil Co. v. Eberhart, 107 Tenn. 409 64 S.W. 760.

"Prior negotiations may be considered to determine the real understanding of the parties concerning the meaning of the terms and provisions of the contract. Dawkins v. Koch, 12 Tenn.App. 220."

Our Supreme Court in the case of Fidelity-Phenix Fire Insurance Company of New York v. Jackson, 181 Tenn. 453, 181 S.W.(2d) 625, approved the following rule for the construction of contracts:

"The Court, placing itself in the position of the contracting parties, considers all the facts and circumstances so as to ascertain what the parties intended, the primary purpose being to ascertain just what was within the contemplation of the parties."

In Southern R. Company v. Bacon, 128 Tenn. 169, 159 S.W. 602, it is said:

"Contracts must be construed with reference to the situation and surroundings of the parties, the nature of the business in which they are engaged and to which

the contract relates, and also with reference to the subject-matter.''

It is our opinion under either the common law or modern rule of construction the agreement between Rogers and defendant is an assignment of the lease.

█ █ The fact that Rogers expressly agreed to remain liable to complainants for the performance of the lease did not create a reversion nor a right to re-enter in Rogers either express or implied. The obligations and liabilities of a lessee to a lessor, under the express covenants of a lease, are not in anywise affected by an assignment or a subletting to a third party, in the absence of an express or implied agreement or some action on his part which amounts to a waiver or estops him from insisting upon compliance with the covenants. This is true even though the assignment or sublease is made with the consent of the lessor. By an assignment of a lease the privity of estate between the lessor and lessee is terminated, but the privity of contract between them still remains and is unaffected. Neither the privity of estate or contract between the lessor and lessee are affected by a sublease. 32 Am.Jur., Landlord and Tenant, Sections 356, 413, pages 310, 339.

█ Thus, the express agreement of Rogers to remain personally liable for the performance of the covenants of the lease created no greater obligation on his part or interest in the leasehold, other than as set forth in the original lease.

█ The argument that since the agreement between Rogers and defendant contains the words, ''sublet'' and ''subletting'' is conclusive the instrument is to be construed as a sublease is, we think, unsound.

"A consent to sublet has been held to include the consent to assign or mortgage the lease; and a consent to assign has been held to authorize a subletting." 51 C.J.S. sec. 36, page 552.

Prior to the consummation of the sale of the Go-Cart business to defendant, he insisted upon the execution of the amendment to the lease extending the term of the original lease. For value received and on the promise of the defendant to perform all of the conditions of the lease as amended, Rogers parted with his entire interest in the property. Defendant went into possession of the property and paid the rent to complainants. He remained in possession of the property for the entire term. By virtue of the sale of the business, defendant became the owner of the improvements with the right to their removal at the expiration of the lease.

Rogers reserved no part or interest in the lease; nor did he reserve a right of re-entry in event of a breach of any of the conditions or covenants of the lease on the part of defendant.

It is our opinion the defendant under the terms of the agreement with Rogers, had a right to the possession of the property for the entire term of the lease as amended, including the right to remove the improvements after the expiration of the lease. Rogers merely agreed to become personally liable for the rent and the expense of the removal of the improvements upon the default of defendant. He neither expressly, nor by implication, reserved the right to re-enter for a condition broken by defendant.

Thus, we are of the opinion the use of the words, "sublet" and "subletting" is not conclusive of the con-

struction to be placed on the instrument in this case; it plainly appearing from the context of the instrument and the facts and circumstances surrounding the execution of it the parties thereto intended an assignment rather than a sublease.

It results the assignments are overruled and the decree of the Chancellor is affirmed with costs.

Shriver and Humphreys, JJ., concur.