545 A.2d 1

**The ITALIAN FISHERMAN, INC. and The New Leaf, Inc.**

**v.**

**Rosalie V. MIDDLEMAS.**

**No. 71, Sept. Term, 1986.**

**Court of Appeals of Maryland.**

Aug. 1, 1988.

Albert D. Brault (Brault, Graham, Scott & Brault, on the brief), Rockville, for appellant.

Robert C. Park, Jr. (Michael J. Gugerty and Linowes & Blocher, on the brief), Silver Spring, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH *, McAULIFFE and ADKINS, JJ.

COLE, Judge.

In this case we must decide whether the assignor of a leasehold estate has a right of reentry upon default in the terms of the lease by the assignee.

The relevant facts are as follows. In 1975, The Italian Fisherman, Inc. (Italian Fisherman) entered into a 25 year ground lease with Robert Middlemas (now deceased) and Rosalie Middlemas (Middlemas) for property located in Rockville, Maryland. The lease provided that Italian Fisherman would be permitted to erect a building on the property in order to conduct business there. In addition, and of particular importance to this case, paragraph VIII of the lease provided that Italian Fisherman could not sell, assign, or transfer the lease nor sublet the property without first obtaining the approval of Middlemas. In conjunction with this provision, paragraph XIV(b), an anti-waiver clause, provided that consent or approval by one party in one circumstance would not be deemed consent or approval of any other action on the same or subsequent occasion. Finally, paragraph XV asserted that the covenants and provisions of the lease would likewise apply to the successors and assigns of the respective parties.

Italian Fisherman took possession of the property and constructed a building at a cost of approximately $175,000 for use as a restaurant. Shortly thereafter, Middlemas consented to a sale of the outstanding capital stock of Italian Fisherman to another corporation, New Leaf, Inc.[1]

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The New Leaf, Inc. joined the Italian Fisherman, Inc. throughout the appeal of this case; however, its rights are the same as Italian

Middlemas made clear, however, that Italian Fisherman would remain the lessee and be responsible for the lease covenants.

In October, 1976, Italian Fisherman entered into negotiations with Armand's Chicago Pizzeria Rockville Limited Partnership (Armand's) for the sale of the restaurant business. In exchange for the business, Armand's agreed to pay Italian Fisherman approximately $335,000 evidenced by promissory notes. The deal was finalized when Middlemas subsequently consented to an assignment of the lease from Italian Fisherman to Armand's. Again, Middlemas made clear that Italian Fisherman was not relieved of its responsibility for performance of obligations contained in the lease.

Italian Fisherman assigned all of its right, title, and interest in the lease to Armand's. To secure payment of the purchase price for the restaurant business, Armand's executed a security agreement granting Italian Fisherman a purchase money security interest in the lease, improvements, furnishings, equipment, and fixtures. A financing statement evidencing the security agreement was filed and recorded in Land Records of Montgomery County. Middlemas was not made aware of and did not give her consent to the security agreement.

Armand's operated a restaurant on the premises until 1984 when it began to experience financial difficulty. The restaurant was closed in August, 1984, and Armand's instituted negotiations for the sale of the business. However, Italian Fisherman declined to consent to the sale. In response, Armand's filed suit against Italian Fisherman seeking injunctive and declaratory relief. Italian Fisherman counterclaimed seeking enforcement of its rights under the

Fisherman's and thus we shall refer to both parties as Italian Fisherman.

security agreement.[2] Middlemas was not a party to these proceedings.

Armand's failed to pay real estate taxes due on September 30, 1984, and did not pay the rent due on October 1, 1984. On October 12, 1984, Middlemas sent a notice of default to Armand's and on October 19 Middlemas paid the overdue taxes. No notice of non-payment was sent to Italian Fisherman; however, it sent to Middlemas on November 19, checks dated November 9, 1984, in payment of the real estate taxes and the October rent. Armand's did not pay November's rent. Italian Fisherman discovered this breach and sent a check covering the rent on November 26, 1984.

By the end of November, Armand's had placed a sign in a window of the restaurant to the effect that the business would be under new management. Armand's also removed most of the equipment and furniture to another restaurant in College Park, Maryland. The parking lot surrounding the restaurant was being utilized by a neighboring car dealer to store his vehicles, and trash was accumulating on the property.

On December 12, 1984, Middlemas delivered a lease termination notice to Armand's and Italian Fisherman stating that the lease had been breached because of Armand's (1) failure to pay the September real estate taxes; (2) failure to pay the October and November rent; and (3) abandonment of the premises. Italian Fisherman's checks were rejected and returned by Middlemas to Italian Fisherman.

On January 12, 1985, Middlemas filed suit in the District Court for Montgomery County against Armand's seeking repossession of the property. Armand's did not answer.

---

**2.** Armand's settled its dispute with Italian Fisherman by an agreement dated April 5, 1985. This agreement provided that Armand's would release Italian Fisherman from the 1976 contract in which Italian Fisherman assigned the lease to Armand's. Armand's disclaimed any further interest in the lease. However, Armand's would remain liable for the payment of $230,000.00 remaining due on the promissory notes it issued.

Italian Fisherman, however, was granted the right to intervene.[3]

Judge Stanley Klavan of the District Court, after a protracted trial, rendered an oral opinion wherein he emphasized that the rights of the parties, as shaped by the transfer of the lease from Italian Fisherman to Armand's, were critical to the outcome of the case. He concluded that Italian Fisherman's transfer of the lease was an assignment giving Armand's "all of [Italian Fisherman's] right, title and interest" in the lease, and no right of reentry was reserved. The trial judge also found that the security agreement between Armand's and Italian Fisherman, which used the lease as collateral, was ineffective to give Italian Fisherman an interest in the lease because the security agreement was never approved by Middlemas. Consequently, Italian Fisherman was merely a creditor of Armand's and had no reversionary rights in the property. The checks sent from Italian Fisherman to Middlemas could only satisfy Italian Fisherman's contractual liability under the lease. Finally, the trial judge specifically found that Armand's had vacated the premises and that its abandonment was a material breach of the lease justifying eviction. Middlemas was therefore granted possession of the premises.

Italian Fisherman appealed this decision to the Circuit Court for Montgomery County which affirmed. We granted Italian Fisherman's petition for certiorari. The critical question we must address is whether Italian Fisherman retained a right to reenter the premises as lessee after assigning the lease to Armand's. To answer this question,

---

**3.** When Italian Fisherman sought to intervene it was discovered that its corporate charter had been revoked several years earlier for failure to pay taxes. The District Court required that Italian Fisherman correct this organizational problem before it would be permitted to intervene. Middlemas argues that Italian Fisherman could not cure Armand's default while their corporate status was annulled and revival of the corporate charter did not give retroactive effect to prior corporate activities. As a result of our holding in this case we do not address this argument.

a brief review of the law relating to the transfer of leasehold estates is in order.

A lease of land creates rights and duties based on two independent grounds. First, the lease represents a conveyance of an estate in real property and a relationship arises between the lessor and lessee based on ownership of the demised premises. The parties are said to be in privity of estate as long as the landlord-tenant relationship exists. Second, the lease agreement creates a contractual relationship between the lessor and lessee. The parties are said to be in privity of contract with the terms of the lease defining their rights and obligations. Typically, the lessee's obligation to pay rent and taxes arises by virtue of both privity of estate and privity of contract. *See* Schoshinski, *American Law of Landlord and Tenant* § 8.1, at 532 (1980); *Consumer's Ice Co. v. Bixler,* 84 Md. 437, 35 A. 1086 (1896).

A lease can be transferred by the lessee in one of two ways: by assignment or sublease. When a lease is transferred by assignment, the assignee steps into the lessee's shoes and acquires all the lessee's rights in the lease. Privity of estate ends between the lessor and lessee and is created between the lessor and the assignee. The assignee therefore becomes bound by the covenants running with the land. Privity of contract between the lessor and lessee, however, does not end by the mere assignment of the lease and the lessee is therefore still bound by the lease provisions. On the other hand, when a lease is transferred by sublease, a new lessor-lessee relationship is created between the original lessee and the sublessee. The original lessee retains both privity of estate and privity of contract with the original lessor and no legal relationship is created between the lessor and the sublessee. Consequently, the legal effect differs between an assignment and a sublease. *See* Schoshinski, *supra,* § 8.10, at 553; 1 *Friedman on Leases* § 7.401 to 7.402, at 281–83 (2d ed. 1983); Powell, *Real Property* § 246[1], at 372.92–93 (1977);

*Williams v. Safe Dep. & Tr. Co.,* 167 Md. 499, 175 A. 331 (1934).

The common law rule governing the determination of whether a lease transfer is an assignment or a sublease is easily stated: If the instrument purports to transfer the lessee's estate for the entire remainder of the term it is an assignment, regardless of its form or of the parties' intention; however, if the instrument purports to transfer the lessee's estate for less than the entire term—even for a day less—it is a sublease, regardless of its form or the parties' intention. Powell, *supra*, § 246[1], at 372.92.

■ Under a strict application of the law of assignment it is clear that Italian Fisherman did not have the right to reenter the premises as lessee. In particular, the lease provided that Italian Fisherman had to obtain Middlemas's consent before assigning or subletting its leasehold estate in the Rockville property. Middlemas specifically consented to an *assignment* of the lease from Italian Fisherman to Armand's but conditioned her consent so that Italian Fisherman would remain liable for any unpaid rent. Since Italian Fisherman transferred to Armand's all of its "right, title and interest" in the Rockville property, one may conclude that the assignment was unequivocal and that Italian Fisherman had divested itself of any interest in the property. Nevertheless, Italian Fisherman maintains that the parties intended that Italian Fisherman would have a right to reenter as lessee of the property.

Italian Fisherman, in essence, asks us to ignore the common law implications arising from the assignment of the lease to Armand's and to give effect to the security agreement between Italian Fisherman and Armand's. Italian Fisherman cites a line of cases from other jurisdictions which have disregarded the common law distinctions between assignments and subleases, classifying the transfer based on the intention of the parties. *See Jaber v. Miller,* 219 Ark. 59, 239 S.W.2d 760 (1951); *see also Gagne v. Hartmeier,* 271 Ark. 845, 611 S.W.2d 194 (1981); *Ernst v.*

*Conditt,* 54 Tenn.App. 328, 390 S.W.2d 703 (1964); *Smith v. Larson,* 36 Wash.2d 236, 217 P.2d 326 (1950); *Bowlby–Harman Lbr. Co. v. Commodore Services Inc.,* 144 W.Va. 239, 107 S.E.2d 602 (1959). Another court found an implied right of reentry under facts somewhat similar to those of the case *sub judice. Olin v. Goehler,* 39 Wash.App. 688, 694 P.2d 1129 (1985). *But cf. Brickum Inv. Co. v. Vernham Corp.,* 46 Wash.App. 517, 731 P.2d 533 (1987).

■ Even if we were inclined to adopt the view espoused in these cases, Italian Fisherman's argument is without merit. The language of the 1976 document of assignment between Italian Fisherman and Armand's was unequivocal and Middlemas consented to the assignment in those terms. Consistent with the assignment, Armand's became Middlemas's lessee and paid rent directly to Middlemas for eight years. Thus, an objective examination of the facts suggests that a lessor-lessee relationship was created between Middlemas and Armand's. During this same period, Italian Fisherman and Armand's executed the security agreement, the terms of which purported to vest rights in Italian Fisherman inconsistent with the prior statement. This inconsistency arises because Armand's attempted to bestow upon Italian Fisherman an interest in the lease. However, even if Italian Fisherman subjectively intended to maintain a continuing interest in the lease by way of the security agreement, there is no evidence that Middlemas shared this intent. The record shows that Middlemas was never advised of the security agreement between Italian Fisherman and Armand's until the fall of 1984. *Compare Olin v. Goehler, supra.* Since Armand's could not transfer any interest in the lease without Middlemas's consent, the security agreement, which would tend to give Italian Fisherman the rights of an assignee, did not vest Italian Fisherman with any rights exercisable against Middlemas.

■ We likewise reject the argument that Middlemas's insistence that Italian Fisherman remain liable for the rent demonstrated that Middlemas intended for Italian Fish-

erman to have the right to reenter the premises as lessee. As previously discussed, Italian Fisherman was obligated to pay the rent by virtue of its continuing privity of contract with Middlemas, despite the assignment to Armand's. *See Williams, supra.* Nor did Italian Fisherman's tender of the October and November rent revive Italian Fisherman's right of reentry. Once transferred by act of assignment, this right was lost unless revived by the lessor. Therefore, once Middlemas decided to terminate the lease on grounds of abandonment by Armand's, no act of Italian Fisherman could undermine this election.

Furthermore, the agreement between Armand's and Italian Fisherman dated April 5, 1985, purporting to transfer the lease back to Italian Fisherman, was of no effect in enhancing Italian Fisherman's rights. To the extent that Italian Fisherman and Armand's intended that the security interest serve as a transfer or assignment of the lease which would vest legal title in Italian Fisherman we agree with Judge Klavan. The use of the security agreement in this manner would essentially give Italian Fisherman the rights of an assignee and this could not be accomplished under the lease without the lessor's consent. However, Middlemas was not a party. *See Flynn v. Mikelian,* 208 Cal.App.2d 305, 25 Cal.Rptr. 138 (1962).

Italian Fisherman also suggests that the security agreement represents a valid assignment of the lease under the line of cases which teach that an assignment from an assignee back to the original lessee/assignor need not be supported by the landlord's consent. *See Coulos v. Desimone,* 34 Wash.2d 87, 208 P.2d 105 (1949); *Fashions Four Corp. v. Fashions Place Associates,* 681 P.2d 830 (Utah 1984). We find, however, that this proposition has not gained wide acceptance and we decline to follow it. We believe that the better approach is to look to the express provisions of the lease. Here, the lease specifically provided that the landlord's consent was necessary to effectuate an assignment. The validity of such a provision was established in *Jacobs v. Klawans,* 225 Md. 147, 169 A.2d 677

(1961). There is no exemption from this requirement in the event the assignee wishes to assign or sublet to the original lessee/assignor. Accordingly, whether the assignment is being made back to the original lessee or some other party is irrelevant. What is important is that the assignment be approved by the landlord. Since Middlemas never consented to the security agreement, no right accrued to Italian Fisherman to reenter the premises as lessee.

In the alternative, Italian Fisherman argues that Middlemas's consent to the original assignment from Italian Fisherman to Armand's also serves as consent for the transfer or assignment of the lease from Armand's back to Fisherman by way of the security agreement. Italian Fisherman relies on the rule established in *Dumpor's Case*, 4 Coke 119b, 76 Eng.Rep. 1110 (1578), adopted by this Court in *Reid v. John F. Weissner Brewing Co.*, 88 Md. 234, 40 A. 877 (1898).

*Dumpor's Case* stands for the proposition that the lessor's consent to one assignment dispenses with the need to obtain the lessor's consent for any future assignments. This rule is inapplicable in this case, however, because the lease from Middlemas to Italian Fisherman expressly provides in paragraph XIV(b) that consent to one transfer would not serve to waive the consent requirement as to any other transfers. That the landlord may preserve his rights, despite the rule in *Dumpor's Case*, by including this type of provision in a lease is generally accepted. *See* Friedman, *supra*, § 7.304e, at 280 n. 18 and accompanying text; *Schoshinski, supra*, § 8.17, at 591 n. 62 and accompanying text. *See also Reid*, 88 Md. at 237, 40 A. at 878.

Since Italian Fisherman had clearly divested itself of any rights in the premises by its assignment of the leasehold to Armand's, the only remaining question is whether Armand's, the lessee, had effectively abandoned the premises. The trial judge found that it had and we agree.

As a general rule, an abandonment of leased premises occurs when the lessee leaves the premises vacant with

the clear intention not to pay rent or to be bound by the terms of the lease. *See tenBraak v. Waffle Shops, Inc.,* 542 F.2d 919, 925 n. 5 (4th Cir.1976); *Berry Energy Consultants v. Bennett,* 331 S.E.2d 823 (W.Va.1985); *see also Shade v. State,* 306 Md. 372, 509 A.2d 664 (1986) (abandonment of home-improvement contract); *Dorman v. Mayor & C.C. of Balto.,* 187 Md. 678, 51 A.2d 658 (1947) (abandonment of non-conforming use).

In this case, the trial judge found as a fact that Armand's abandoned the premises because it: (1) failed to pay the October and November rent; (2) failed to pay the real estate taxes due September 30; (3) closed its business; (4) turned off the gas and electricity in the building; (5) failed to winterize the building seasonably; (6) removed its equipment from the premises; (7) allowed the premises to be used as a parking lot; and (8) declined to participate in the suit. We think this evidence is more than sufficient to support the trial judge's conclusion.

Because Armand's, contrary to the lease, abandoned the premises, Middlemas is entitled to possession, there being no right of reentry to Italian Fisherman.

JUDGMENT AFFIRMED.

APPELLANT TO PAY THE COSTS.