*CLARK OFFICE BUILDING, LLC v. MCM CAPITAL PARTNERS, LLLP, ET. AL.*, **NO. 544, SEPTEMBER TERM, 2019.**
**Opinion filed on January 21, 2021, by Deborah S. Eyler**

**UNJUST ENRICHMENT - RESTITUTION - QUASI-CONTRACT – CLAIM AGAINST STRANGER TO CONTRACT FOR RESTITUTION BASED ON UNJUST ENRICHMENT FOR MONEY NOT PAID BY CONTRACTING PARTY - SECTION 25,** *RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT* **(2011).**

For three months, Tenant failed to pay rent under commercial lease, and allowed Occupants to use at least part of the premises, for free. Tenant and Occupants vacated the premises and Tenant surrendered the premises to Clark, the lessor. Clark sued Tenant for breach of contract for unpaid rent for the remainder of the lease term, which included the period that Occupants occupied the premises, and sued Occupant for unjust enrichment, seeking to recover the benefit to Occupants of its use and occupancy of the premises for three months. In a bench trial, Clark recovered against Tenant on the contract claim, but lost primarily on legal grounds on the unjust enrichment claim against Occupants. Clark appealed verdict in favor of Occupants. Tenant did not appeal.

*Held*: Judgment affirmed. Trial court incorrectly ruled that, as a matter of law, a party to a contract (Clark) cannot recover restitution for unjust enrichment against a non-party to the contract (Occupants) that was benefitted by the other party's (Tenant's) breach of the contract when the subject matter of the contract and the unjust enrichment claim are the same (payment for use of premises). Nevertheless, Clark could not recover restitution against Occupants, as a matter of law, for two reasons: 1) any enrichment enjoyed by Occupants was conferred upon them by Tenant, not Clark; and 2) any such enrichment was not unjust because, among other reasons, Clark was able to pursue and obtain a judgment against Tenant for the same value of the premises during the same time that Occupants used them.

Circuit Court for Montgomery County
Case No. 445762-V

_____

CLARK OFFICE BUILDING, LLC

v.

MCM CAPITAL PARTNERS, LLLP, ET AL.

_____

Reed,
Gould,
Eyler, Deborah S.,
 (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Eyler, Deborah S., J.

_____

Filed:  January 29, 2021

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

In the Circuit Court for Montgomery County, Clark Office Buildings, LLC ("Clark"), the appellant, sued MCM Capital Partners, LLLP ("Tenant") for breach of a commercial lease and sued MCM Capital, LLC and Alta Realty Company, LLC ("Occupants"), the appellees, for unjust enrichment, on the ground that, without its knowledge, they occupied the leased premises for part of the time that Tenant failed to pay rent. After a bench trial, the court granted judgment to Clark against Tenant for breach of lease and entered judgment in favor of Occupants on the unjust enrichment claim.

Clark has appealed, challenging the judgment in Occupants' favor.[1] We shall affirm.

### FACTS AND PROCEEDINGS

The trial took place on January 16, 2019. Clark, Tenant, and Occupants all participated and were represented by counsel. The following facts were adduced.

On August 27, 2014, Clark, owner of an office building at 7500 Old Georgetown Road, in Bethesda, executed a written lease ("Lease") with Tenant for 19,492 square feet of office space, known as Suite 1300 ("the Premises"). The Lease term was for five years, from February 1, 2015 through January 31, 2020. Tenant was required to pay a monthly base sum and other specified amounts as rent, due on the first day of each month.

---

[1]Tenant did not appeal the judgment against it.

Beginning on January 1, 2018, Tenant failed to pay its rent under the Lease. The next month, in telephone and email communications with Clark, Tenant stated that it was experiencing financial problems but was in the process of working out an arrangement that would resolve them. Clark held off issuing a notice of default under the Lease.

Without Clark's knowledge, during January, February, and March of 2018, Tenant allowed Occupants to occupy a portion of the Premises.[2] Although the Lease required Clark's consent for Tenant to assign or sublease the Premises, Tenant did not request or obtain it. There was no writing associated with Occupants' use and occupancy of the Premises and no evidence that Occupants paid Tenant (or anyone) for their use and occupancy of the Premises.

Around March 25, 2018, Clark learned through an agent that Tenant had vacated the Premises, which were empty. Clark contacted Tenant, which told Clark it was surrendering the Premises. On March 27, 2018, Clark issued a notice of default demanding Tenant pay the rent remaining for the balance of the Lease term. Tenant did not do so. Clark investigated the situation and learned that Occupants had been using at least a portion of the Premises to operate their business and that Occupants had registered the Premises as their place of business.[3]

---

[2]Exactly how much of the Premises Occupants occupied was disputed.

[3]In motions prior to trial, Clark asserted that the principals in Tenant's business also were running Occupants' business. There was no evidence introduced at trial about such a relationship, however, nor was there any claim based on piercing the corporate veil.

Clark adduced evidence that it had acted to mitigate damages, without success. Counsel for Tenant acknowledged that Tenant had defaulted under the Lease and that Tenant had vacated the premises by March 31, 2018, and focused Tenant's defense on damages. Occupants presented evidence that they had used no more than 25% of the Premises.

Occupants filed a motion for judgment on the ground that Clark did not have a legally viable claim for unjust enrichment, based on quasi-contract, for the rental value of the Premises for the period of their occupancy, because Clark and Tenant had an express contract (the Lease), that covered the same subject matter (rent for use and occupancy of the Premises). The court denied the motion.

That same legal argument was repeated by counsel for Occupants in closing. Tenants' counsel argued that the Lease did not require it to pay rent for the remainder of the Lease term as damages, and that if it did, the provision was unenforceable as a penalty.

On March 7, 2019, the court entered a memorandum opinion and order. The court found Tenant liable to Clark for $748,914.31 for breaching the Lease by non-payment of rent from January 1, 2018 through January 2019 and awarded $20,428.89 in attorneys' fees to Clark. On Clark's unjust enrichment claim against Occupants, the court ruled that Clark could not recover restitution for their use and occupancy of the Premises from January 1, 2018 through March 31, 2018 because the Lease between Clark and Tenant covered the same subject matter. The court further ruled that, even if that were not so,

Occupants were subtenants and as such were not in privity with Clark; therefore, they could not be liable to Clark for damages for their use and occupancy of the Premises.

After judgments were entered, and a motion to amend was denied, Clark noted a timely appeal, presenting the following questions for review:

I.    Did the express, written Lease between Appellant and Tenant bar Appellant's quasi-contract claim against Occupants for Occupants' beneficial use and occupancy of the Premises?

II.   Was the trial court clearly erroneous in finding Occupants to be subtenants of Tenant?

As noted, we shall affirm the judgment of the trial court.

**STANDARD OF REVIEW**

On appellate review of an action tried to the court, this Court "review[s] the case on both the law and the evidence" and "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, . . . giv[ing] due regard to the opportunity of the trial court to judge the credibility of the witnesses."  Md. Rule 8-131(c).  A trial court's findings are not clearly erroneous if "any competent material evidence exists in support of the trial court's factual findings[.]"  *Webb v. Nowak*, 433 Md. 666, 678 (2013) (citations omitted).  "[A]n appellate court may affirm a trial court's decision on any ground adequately shown by the record even though the ground was not relied upon by the trial court or the parties."  *YIVO Inst. for Jewish Research v. Zaleski*, 386 Md. 654, 663 (2005) (citations omitted).

-4-

Clark's sole claim against Occupants was entitled, "Quantum Meruit/Quasi-Contract Against Occupants (Restitution)." "Quantum meruit," which means "as much as deserved[,]" can refer either to an implied-in-fact contract or an implied-in-law contract. *Mogavero v. Silverstein*, 142 Md. App. 259, 274 (2002) (quoting *Black's Law Dictionary* 1243 (6th ed. 1990)). An implied-in-fact contract "is an agreement which legitimately can be inferred from intention of the parties as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men." *Md. Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706 (2015) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94 (2000) (additional citations omitted)). It is an actual contract.

By contrast, an implied-in-law contract, otherwise known as a quasi-contract or, when described as a claim, unjust enrichment, is not a contract at all, but a "legal fiction." *Dashiell*, 358 Md. at 94 (quoting *Black's Law Dictionary* 324). It was "invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise." *Id.*; *see also AAC HP Realty, LLC v. Bubba Gump Shrimp Co. Rests., Inc.*, 243 Md. App. 62, 70 (2019) (same); *Alts. Unlimited v. New Baltimore City Bd. of Sch. Comm'rs*, 155 Md. App. 415, 480 (2002) (same); *Mogavero*, 142 Md. App. at 275 (quasi-contract is a "rule of law that requires restitution to the

plaintiff of something that came into defendant's hands but belongs to the plaintiff in some sense" (citation omitted)).

Recovery in quasi-contract takes the form of an action for restitution based on unjust enrichment. *Mogavero,* 142 Md. App. at 276. Unjust enrichment first was established as an independent basis of liability in the common law in *Restatement of Restitution* (1937) ("*First Restatement*"). *See* Douglas Laycock, *The Scope and Significance of Restitution*, 67 Tex. L. Rev. 1277, 1278 (1989) ("The *[First] Restatement* legitimated three insights: that a seemingly great variety of specific rules serve a common purpose, that these rules can be thought of as a single body of law under the name 'restitution,' and that these rules support a general principle that unjust enrichment must be disgorged. This was a major accomplishment; it created the field.").

"A person who receives a benefit by reason of an infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the manner and amount necessary to prevent unjust enrichment." *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151 (2000) (quoting *Restatement (Second) of Restitution* § 1 at 8-9 (Tentative Draft No. 1 (1983)). In *Hill v. Cross Country Settlements, LLC*, 402 Md. 281 (2007), the Court of Appeals enumerated the elements of a claim for unjust enrichment/restitution as follows:

> 1) A benefit conferred upon the defendant by the plaintiff; 2) An appreciation or knowledge by the defendant of the benefit; and 3) The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Id*. at 295 (citations omitted). These elements were derived from *Williston on Contracts* § 1479 (3rd ed. 1970). *See Everhart v. Miles*, 47 Md. App. 131, 136 (1980).

The measure of damages for unjust enrichment is the gain to the defendant not the loss to the plaintiff. *Mogavero*, 142 Md. App. at 276 (citation omitted). This is because "'[t]he restitution claim. . . is not aimed at compensating the plaintiff but at forcing the defendant to disgorge benefits that it would be unjust for him to keep.'" *Hill,* 402 Md. at 296 (quoting *Mass Transit Admin. v. Granite Constr. Co*., 57 Md. App. 766, 775 (1984)).

In *Dashiell*, the Court of Appeals held that it is "'settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties.'" 358 Md. at 96 (quoting *FLF, Inc. v. World Publ'ns, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998)). In that case, Caroline County had contracted with Dashiell, a construction company, to build improvements to a local detention center. After the County refused to pay delay costs Dashiell had incurred, Dashiell sued it for unjust enrichment based on quasi-contract.[4] The court granted summary judgment for the County on the ground that the claim was precluded by the express contract between the parties on the same subject matter.

Affirming the judgment, the Court of Appeals stated, "[t]he contract [between the County and Dashiell] defined the entire relationship of the parties with respect to its general subject matter. [Dashiell] is now attempting, via a theory of unjust enrichment,

---

[4]Dashiell also sued for breach of contract, but that claim was dismissed because it was untimely under the terms of the parties' express contract.

to get . . . damages . . ., even though its contract with the County specifically covers this subject matter." 358 Md. at 101. The Court criticized Dashiell's unjust enrichment claim as "a unilateral attempt to amend the agreement in a manner that the law does not allow." *Id*. It explained that the well-established principle that a party to a contract that covers a subject matter cannot pursue recovery under quasi-contract based on the same subject matter "'holds the contract parties to their agreement and prevents a party who made a bad business decision from asking the court to restore his expectations.'" *Id*. (quoting *Prodromos v. Poulos*, 560 N.E.2d 942, 948 (Ill. App. Ct. 1990)); *see also Martz v. Day Dev. Co., L.C.*, 416 F. Supp. 3d 517, 526 (D. Md. 2019) ("'The general rule [under Maryland law] is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests'") (quoting *Granite Constr. Co.*, 57 Md. App. at 776 (cleaned up)).[5]

Clark contends the trial court erred by applying this principle to preclude its unjust enrichment claim against Occupants. It asserts that the principle only applies when the parties to the unjust enrichment claim also are parties to the express contract, as was the case in *Dashiell*, and has no application when the unjust enrichment claim is between a party to the express contract and a stranger to that contract, even if the subject matter of the claim and the express contract are the same. It maintains that because Occupants were not parties to the Lease, it could sue them for unjust enrichment for the value of the

---

[5]*Martz* is pending on appeal in the Fourth Circuit.

benefit of their use and occupancy of the Premises for three months, regardless of the existence of the Lease.

Occupants respond that the principle stated in *Dashiell* applies not only when one party to an express contract sues the other party for unjust enrichment but also when the subject matter of the express contract and the unjust enrichment claim are the same, even if the parties to the suit are not the same as the parties to the contract. Therefore, Clark could not sue them for unjust enrichment because the Lease covered the payment of rent for use and occupancy of the Premises during the time Occupants were there, even though the Lease was between Clark and Tenant and Occupants were not a party to it.

As explained above, in *Dashiell*, the context of the Court's holding that a party to an express contract cannot bring an unjust enrichment claim based on the same subject matter as the contract was that the parties to the express contract and the parties to the unjust enrichment claim were the same. Here, they are not. Clark was a party to the Lease, which governed payment for the use and occupancy of the Premises, but the Occupants were not. In its memorandum opinion in this case, however, the trial court applied the principle in *Dashiell*, citing *Glynn v. Impact Science & Technology, Inc.*, 807 F. Supp. 2d 391, 441 (D. Md. 2011), *aff'd*, 710 F.3d 209 (4th Cir. 2013). Clark asserts that *Glynn* does not support that position; the Occupants assert that it does.

Clark is correct that *Glynn* is no different than *Dashiell* with respect to this issue. A departed employee (Glynn) sued his former employer (IST) for numerous causes of action. The parties' relationship was governed by Glynn's written employment contract, which contained provisions that survived his departure from IST. In a counterclaim, IST

sought restitution on the ground that Glynn had been unjustly enriched by payments he received from a company he had worked with during his employment. The court granted summary judgment on the ground that the employment contract between the parties precluded IST's unjust enrichment claim. Because the parties to the employment contract and the parties to the unjust enrichment claim were the same, *Glynn* is of no help in resolving the issue before us.

Clark maintains that landlord tenant cases from the New York Appellate Division and a Fourth Circuit case applying Virginia law support its position that it could proceed with an unjust enrichment claim against Occupants because they were not parties to the Lease.[6]

In the New York cases, the Appellate Division has held that a lessor may sue a non-party to the lease for the value of the non-party's use and occupancy of the premises. For instance, in *Carlyle, LLC v. Beekman Garage LLC*, 19 N.Y.S.3d 520 (N.Y. App. Div. 2015), the owner of a parking garage leased it to a tenant, who in turn allowed a third party to use and occupy it. When the tenant failed to pay its rent, the owner sued the occupant, alleging that it had been unjustly enriched. After the trial court denied the occupant's motion to dismiss, the occupant took an interlocutory appeal.[7] Affirming, the Appellate Division held that the owner's claim against the occupant was not precluded by

---

[6]Clark also cites a Colorado trial court opinion that is unpublished and merely refers to the New York cases.

[7]Under New York law, the denial of a motion to dismiss is appealable.

the express contract (the lease) covering the same subject matter (rental of the parking garage) because any obligation of the occupant would not arise from the lease, to which it was not a party, but "'upon the theory of quantum meruit, and is imposed by law for the purpose of bringing about justice without reference to the intention of the parties.'" *Id*. at 522 (quoting *Eighteen Assocs. v. Nanjim Leasing Corp.*, 683 N.Y.S.2d 291, 292 (N.Y. App. Div. 1999)); *see also Gateway I Group v. Park Ave. Physicians, P.C.*, 877 N.Y.S.2d 95 (N.Y. App. Div. 2009) ("because there was no contract in place between the corporate appellants and the plaintiff governing the subject matter, the corporate appellants' contention that the plaintiff is precluded from recovering unpaid rent on a quantum meruit basis is without merit").

These New York Appellate Division opinions are not persuasive. They do not address whether claims of this sort can satisfy the elements of an action for unjust enrichment/restitution. (According to the court in *Ministers, Elders and Deacons of Reformed Protestant Dutch Church of City of New York v. 19 Broadway, Inc.*, 579 N.Y.S.2d 543 (N.Y. Civ. Ct. 1991), a suit by an owner against two subtenants, who used and occupied the property during ten years of litigation that began when the primary tenant did not renew its lease, a claim for use and occupancy is based in part on a New York statute allowing recovery of a judgment for use and occupancy for a period in which rent was due but not paid.) The cases simply refer to the form of quantum meruit that is a contract implied-in-law without analyzing the elements of unjust enrichment or

-11-

how they were satisfied.[8] We have not found appellate cases from other jurisdictions that have followed them.

By contrast, in *Lincoln Land Company, LLC v. LP Broadband, Inc.*, 408 P.3d 465 (Idaho 2017), the court held, in a similar circumstance, that the plaintiff could not prevail on an unjust enrichment claim because it could not prove one of the elements – that the benefit the defendant received was conferred upon it by the plaintiff. In that case, Lincoln leased a grain silo to General Mills, which in turn sublet the rooftop to LP Broadband, for $50 a month. Even though the lease between Lincoln and General Mills prohibited subleases without Lincoln's consent, General Mills did not seek or obtain Lincoln's consent to sublease the rooftop to LP. When Lincoln learned what General Mills was doing, it sued LP for unjust enrichment, to recover the restitution benefit LP had received. The trial court granted summary judgment to LP on the ground that, on the undisputed material facts, the benefit LP had enjoyed was not conferred upon it by Lincoln (the lessor) but by General Mills (the tenant).

The Supreme Court of Idaho agreed and affirmed. It reasoned that, as lessor, Lincoln's interest in the leased premises was limited to the right to retake the premises at the end of the lease term. As such, Lincoln had no ability to confer a possessory interest in the property upon LP (or anyone other than General Mills) and, by performing its contract with General Mills, could not have conferred and did not confer the benefit of

---

[8]Indeed, the cases do not seem consistent with the holding of the New York Court of Appeals in *Georgia Malone & Co., Inc., v. Rieder*, 973 N.E.2d 743 (N.Y. 2012), regarding unjust enrichment claims in three-party situations, as we shall discuss below.

use and occupancy of the premises upon LP. Rather, General Mills, having the right to use and occupy the premises under the lease, conferred the benefit of subleasing the rooftop upon LP, even though it did so in violation of the terms of the lease. On that set of facts, Lincoln could not prove that it had conferred the benefit in question upon LP; in Idaho, as in Maryland, conferral of the benefit by the plaintiff upon the defendant is an essential element of a claim for unjust enrichment.

In addition to the New York cases, Clark cites *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 493 (4th Cir. 1992) (applying Virginia law), to support its position. There, Allied, an investment capital company, asked Raymond, an accounting firm, to perform an audit of CAR, a small company Allied had invested in. For six months, Raymond performed the auditing work and submitted monthly bills to CAR, which CAR paid. Before Raymond finished the audit but after it had performed more work, CAR declared bankruptcy. Raymond sought relief in the bankruptcy court, unsuccessfully, and then sued Allied for breach of express contract and for quasi-contract, to recover what it was owed for the auditing work. A jury returned a verdict in favor of Allied on the express contract claim and against Allied on the quasi-contract claim, awarding Raymond approximately $135,000 dollars.

On appeal, Allied argued that the trial court had erred by declining to instruct the jurors that if they determined that there was an express contract for the auditing work between Raymond and CAR, they had to find against Raymond on both its claims. In other words, Allied took the position that if Raymond and CAR had an express contract for the auditing work, then as a matter of law Raymond could not recover in quasi-

contract against Allied for the value of the services covered by the contract, even though Allied was not a party to the contract. While set in a different context, this position mirrors that of the parties to this appeal.

In an opinion authored by retired Supreme Court Justice Powell, the Fourth Circuit rejected Allied's position and affirmed Raymond's judgment against Allied for unjust enrichment. The court assumed that there was an express contract between Raymond and CAR for the auditing services and recognized the settled principle that when parties have an express contract on a subject matter, one party to the contract cannot pursue a claim in quasi-contract against the other on the same subject matter. It held that the principle did not apply, however, because, although the unjust enrichment claim was brought *by* one party to the auditing contract (Raymond), it was brought *against* a non-party to that contract (Allied). The court concluded that, in that case, it was insufficient that the express contract covered the subject matter; the parties to the unjust enrichment claim had to be the same parties to the express contract for preclusion to apply.

The *Raymond* court went on to cite cases that had rejected the position Allied was advocating. *See Peter v. United States*, 6 Cl. Ct. 768, 780 (1984) ("The rule that the existence of an express contract preempts an implied contract has full effect *only when the parties to both contracts are the same.*") (emphasis in *Raymond*); *Juda v. United States*, 6 Cl. Ct. 441, 454 (1984) (same); and *Avery v. Sielcken-Schwarz*, 68 A.2d 635, 637 (N.J. Sup. Ct. App. Div. 1949) ("Defendant leans heavily on the rule that the existence of an express contract excludes an implied contract. That rule has full effect *only* when the parties to the express contact are the same as the parties to the action")

(emphasis in *Raymond*) (citations omitted)). The court held that the trial court had not erred by declining to give the jury instruction Allied had requested because it did not accurately state the law.

In distinguishing cases Allied brought to its attention and discussing unjust enrichment in three-party situations, the court explained why the jury's verdict against Allied for unjust enrichment was fair given the particulars of the case. By performing its auditing contract with CAR, Raymond had conferred a benefit upon Allied. For its own investing purposes, Allied needed CAR to be audited. Indeed, Allied had asked Raymond to perform the auditing work and had done so under circumstances that would make it reasonable for Allied to have expected to pay for the work itself. The court pointed out that that situation differed from those in which a stranger to a contract negotiated by others benefitted gratuitously from the contract's being performed, without having sought a benefit.

The court recognized the principle that "'a person who confers a benefit either directly or indirectly upon another in the course of performance of a contract with a third person is not entitled to compensation . . . *merely* because of the failure of performance by the third party.'" *Id*. at 492 (quoting *Nat'l City Bank v. Fleming*, 440 N.E.2d 590, 599 (Ohio Ct. App. 1981) (emphasis and some citations omitted in *Raymond*). That principle applies when the person being benefitted *did not induce the conferral of the benefit*, however. By contrast, Allied had "requested and monitored" Raymond's performance of the accounting services and had assured that Raymond would be paid. *Raymond,* 961 F.2d at 492.

The language quoted by the *Raymond* court originates in section 110 of the *First Restatement*:

> A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.

In the case at bar, Occupants cite that language as well, arguing that it limits recovery for unjust enrichment in three-party situations such as this. Specifically, they maintain that, when applied here, the principle means that, if Clark's performing its contractual obligation by making the Premises available to Tenant indirectly conferred a benefit upon Occupants, by enabling Tenant to make the Premises available to them, Clark cannot obtain restitution from Occupants merely because Tenant failed to perform its correlative contractual obligation to pay rent.

A limitation on the right to pursue unjust enrichment based on section 110 of the *First Restatement* often has been applied in suits by unpaid subcontractors against property owners. Our Court of Appeals applied it in such a situation, holding that the defendants had been enriched, but not unjustly. *Bennett Heating & Air Conditioning, Inc. v. Nationsbank,* 342 Md. 169 (1996). In *Bennett*, unpaid subcontractors sued the foreclosure purchasers (and their lenders) of a house they had worked on. The general contractor had not been paid by the original owner and had not paid the subcontractors, and, by virtue of the foreclosure, the subcontractors had lost their mechanics' liens. Believing that the defendants had benefitted from their work on the house, the subcontractors pursued claims for unjust enrichment. The circuit court dismissed their complaint.

The case reached the Court of Appeals, which affirmed. It discussed *Goldberg v. Ford*, 188 Md. 658 (1947), another unjust enrichment case that was brought by an unpaid party to a contract against a non-party to the contract. In *Goldberg,* the owner of land with coal deposits leased it to a lessee with the right to strip mine it upon payment of a royalty. The plaintiffs, coal miners, contracted with the lessee to remove the coal and load it on trucks the lessee was to provide. After the miners incurred $18,000 in expenses uncovering 8 tons of coal from the property, the lessee breached its contract with them by failing to provide trucks and breached its lease with the owner by failing to pay royalties. The miners sued the owner for unjust enrichment on the theory that the owner had benefitted from the miners' unpaid labor. The Court held that the benefit to the owner was not unjust, as a matter of law, because the lease gave the owner the unqualified right to re-enter the property and take possession of the coal, the miners knew of that provision, and the miners' only contract was with the lessee. The Court commented that the miners were in the same position as an unpaid subcontractor, which would be without a remedy but for the mechanics' lien statute.

The *Bennett* Court relied upon *Goldberg* and endorsed the observations of a Pennsylvania court respecting unjust enrichment in a three-party situation:

> [A] "third party is not *unjustly* enriched when it receives a benefit from a contract between two other parties where the party benefitted has not requested the benefit or misled the other parties." The quoted language is a sufficiently correct statement of the law to be ordinarily applicable to the problem of whether restitution lies where benefits are conferred on a stranger to a contract by the performance rendered by one party to that contract.

342 Md. at 182 (quoting *D.A. Hill Co. v. CleveTrust Realty Investors*, 573 A.2d 1005, 1010 (Pa. 1990) (emphasis in original)).

In unpaid subcontractor cases, benefits of this type often have been categorized as "incidental" and not subject to recovery as restitution, because allowing restitution would in effect force the building owner into a contract with a stranger whose performance happened to have benefitted him. *See* John P. Dawson, *The Self-Serving Intermeddler*, 87 Harv. L. Rev. 1409, 1444 (1974), discussing "Gains to a Stranger Through Performance of Contract."[9]

About fifteen years after *Bennett* was decided, the American Law Institute published the *Restatement (Third) of Restitution and Unjust Enrichment* (2011) ("*Third Restatement*").[10] Although the *Third Restatement* clarified and restructured the concepts underlying restitution, some of its sections relate to those in the *First Restatement*. Section 25 of the *Third Restatement* – "Uncompensated Performance Under Contract

---

[9]As mentioned *supra*, the New York Appellate Division landlord tenant unjust enrichment cases are not consistent with the leading New York Court of Appeals case on unjust enrichment in three-party situations. In *Georgia-Malone & Co. v. Rieder*, 973 N.E.2d at 747-48, the court held that to obtain restitution based on unjust enrichment in a three-party case, there must be proof of a close relationship between the plaintiff and the third party.

[10]In 1980, the American Law Institute began work on a second *Restatement of Restitution*. The effort proved unsuccessful and was "abandoned *in extremis*" in 1985. A. Krull, *Three Restatements of Restitution*, 68 Wash. & Lee L. Rev. 867 (2011). The *Third Restatement* was developed over fifteen years, from 1996 to 2011. *Id*.

With Third Person" – relates to section 110 of the *First Restatement*, as the authors of the

*Third Restatement* explain:

> Section 25 takes as a starting point the proposition, inherited from *Restatement of Restitution* § 110 (1937), that when A confers a benefit on B as the performance of A's contract with C, C's failure to render the performance promised to A does not necessarily mean that B has been enriched at A's expense; nor does it mean that any enrichment of B is necessarily unjust.

*Third Restatement* at Comment b.

> Section 25 of the *Third Restatement* provides:

> (1) If the claimant renders to a third person a contractual performance for which the claimant does not receive the promised compensation, and the effect of the claimant's uncompensated performance is to confer a benefit on the defendant, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment.

> (2) There is unjust enrichment for purposes of subsection (1) only if the following three conditions are met:

>> (a) Liability in restitution may not subject the defendant to a forced exchange (§ 2(4)).[11] This condition is likely to be satisfied if the benefit realized by the defendant
>>> (i)   is one for which the defendant has expressed a willingness to pay,
>>> (ii)  saves the defendant an otherwise necessary expense, or
>>> (iii) is realized by the defendant in money.
>> (b) Absent liability in restitution, the claimant will not be compensated for the performance in question, and the defendant will retain the benefit of the claimant's performance free of any liability to pay for it.

---

[11]Section 2 of the *Third Restatement* is entitled "Limiting Principles." Subsection 4 provides, "Liability in restitution may not subject an innocent recipient to a forced exchange: in other words, an obligation to pay for a benefit that the recipient should have been free to refuse."

(c) Liability in restitution will not subject the defendant to an obligation from which it was understood by the parties that the defendant would be free.

(3) Restitution by the rule of this section may be qualified or denied if recovery would conflict with a system of priorities, established by other law, ordering claims against the third person, the defendant, or the assets of either.

This section put meat on the bones of section 110 of the *First Restatement*. Section 110 had established that the mere fact that one who performed a contract that benefitted a third party was not paid by the other contracting party did not entitle the performing party to restitution from the third party. It thereby implied that additional circumstances *could* entitle the performing party to restitution. The *Third Restatement* recognized that restitution could be recoverable for unjust enrichment in such three-party situations, but imposed limiting conditions to recovery of restitution, in subsection 25(2).

The limiting conditions closely align with the fairness factors that led the *Raymond* court to affirm the restitution judgment against Allied. First, the defendant must not be subject to a forced exchange. In *Raymond*, Allied had expressed a willingness to pay for the audit and had saved itself a necessary expense by not paying, so there was no forced exchange. Second, if there is no restitution, the plaintiff will not be compensated for his or her performance and the defendant will retain the benefit of that performance. In *Raymond*, absent restitution, Raymond would not be paid for the audit it had performed, and Allied would keep the benefit of the audit, because CAR, the party with which Raymond had contracted, was bankrupt. And finally, restitution will not result in the defendant's being responsible for an obligation all involved understood it

would not be responsible for.  In *Raymond*, there was no understanding that Allied would *not* pay for the audit; to the contrary.

Synthesizing the concepts discussed in the cases above and those formulated in the *Third Restatement*, we conclude that Clark's unjust enrichment claim against Occupants failed as a matter of law (1) for lack of evidence that it conferred a benefit upon Occupants; and (2) because, even if it conferred a benefit upon Occupants, the evidence did not show that Occupants were *unjustly* enriched.

From January through March 2018, Tenant did not pay rent to Clark as required by the Lease.  Under the terms of the Lease, Tenant had the sole right to use and occupy the Premises during the Lease term, so long as Clark did not seek to retake possession under the Lease.  Clark did not do so until March 27, 2018.  During the January through March time period, Tenant allowed Occupants to use and occupy the Premises, or part of the Premises, conferring a benefit upon them.  Just as in *Lincoln*, *supra*, Clark, as landlord, did not confer that benefit upon Occupants.  It did not have the ability to do so during that time, unless it exercised its right to retake possession, which it did not do.  Tenant, not Clark, conferred the benefit upon Occupants.  It does not matter that Tenant did so in violation of the Lease.  It nonetheless conferred the benefit.

Even if Clark indirectly conferred a benefit on Occupants by performing under the Lease – *i.e.*, by making the Premises available to Tenant, which in turn made it possible for Tenant to allow Occupants to use and possess the Premises – the evidence adduced could not support a finding that Occupants benefitted unjustly.  To be sure, the evidence here possibly could satisfy one of the conditions in section 25(2) of the *Third*

*Restatement*. Assuming Occupants did not pay Tenant for their use and occupancy of the Premises – and there was no evidence one way or the other on that point – one reasonably could conclude that liability for unjust enrichment would not subject Occupants to a forced exchange. Although there was no evidence that they had expressed a willingness to pay for the use and occupancy of the Premises, or that they had arranged for the situation so they would be benefitted, the evidence could establish that they were saving an otherwise necessary expense (the cost of a location to operate their business).

Significantly, however, the evidence did *not* show that without restitution, Clark would not be compensated for performing under the Lease between January and March 2018. It showed the opposite. Clark brought a breach of contract claim against Tenant, Tenant defended the claim at trial, and Clark obtained a judgment for the full amount of rent owed, including the same January through March 2018 rent it was seeking to recover against Occupants. In *Raymond*, the evidence showed that CAR was in bankruptcy and Raymond could not recover against it in the bankruptcy case; there was no evidence in the case at bar that Tenant was bankrupt.

As the cases we have discussed establish, the principle in *Dashiell* does not necessarily bar a claim for unjust enrichment by a party to a contract against a stranger to the contract when the claim involves the same subject matter as the contract. However, when the plaintiff has a viable breach of contract remedy against the contracting party for the same recovery it seeks in restitution, based on unjust enrichment, against a third party, retention of the benefit by the third party will not be unjust.

This concept is well illustrated by *Abraham v. WPX Energy Production, LLC*, 20 F. Supp. 3d 1244 (D.N.M. 2014). There, the plaintiffs owned royalty interests burdening oil and gas leases. They had contracts with WPX, the lessee on the leases and the "upstream" exploration and production company. WPX in turn had contracts with WFC and WER, which were "midstream" enterprisers and producers. The plaintiffs sued all three, alleging that they were jointly responsible for underpayment of royalties. They sued WPX for breach of contract and WFC and WER for unjust enrichment, alleging that the latter two were benefitted because they retained royalties they should have paid out.

WFC and WER moved to dismiss for failure to state a claim for which relief could be granted. The court concluded that, even though New Mexico law permits a plaintiff to pursue an unjust enrichment claim that is the subject of a contract between the plaintiff and another party, it does not allow a plaintiff to do so when the plaintiff can pursue the contract claim instead. Analogizing to unpaid subcontractor cases, the court stated:

> Just as New Mexico courts disfavor subcontractor suits against property owners, the Court believes that New Mexico courts would likewise disfavor an unjust enrichment claim against a third party when that claim involves the same subject as a contract, *unless there is something preventing the plaintiffs from pursuing the contract claims*. The Court concludes that, under New Mexico law, the existence of a contract with a different party does not automatically bar the unjust enrichment claim, but the plaintiff cannot pursue the unjust enrichment claim unless there is something – bankruptcy, statutes – prohibiting the plaintiff from pursuing the contract claim.

*Id*. at 1276 (emphasis added). The court further explained that its conclusion also was supported by subsection 25(2)(b) of the *Third Restatement*. The comments to that subsection explain that a claimant, A, will not be compensated for his unpaid

performance of a contract with C when he attempts to recover restitution from B instead of pursuing a viable contract claim against C. *See Third Restatement* at Comment b.[12] The court granted the motion to dismiss the unjust enrichment claims, as the plaintiff could not pursue them "against a third party when there is a viable breach-of-contact claim covering the same subject matter." *Abraham*, 20 F. Supp. 2d at 1277.

In this case, Occupants benefitted from using and occupying at least part of the Premises for three months, apparently at no cost, and in a sense, they have retained that benefit. Clark had a contract claim against Tenant that covered the value of the benefit retained by Occupants, however, and it pursued that claim and obtained a judgment against Tenant. That judgment includes the $188,951.34 sum Clark sought to recover against Occupants as restitution. The mere fact that the Lease between Clark and Tenant covered the same subject matter as the unjust enrichment claim by Clark against Occupants – third parties to the Lease – did not bar Clark's unjust enrichment claim. But under the circumstances, in which Clark had a viable contract claim against Tenant for the same recovery it was seeking against Occupants, and indeed recovered on that claim, it was not unjust for Occupants to retain the benefit they received.

---

[12]In Illustration 3 within Comment b, the authors set forth a scenario in which a buyer contracts with a developer for a new house and contracts with a nursery for new shrubbery for the house. The nursery performs its work and submits a bill. Before paying the bill, the buyer dies. The developer cancels the contract in a deal with the buyer's estate and then sells the house, with the shrubbery, to another purchaser. The nursery sues the developer for restitution, on the theory that it was unjustly enriched by the installation of the shrubbery, which increased the sales value of the house. According to the authors, the nursery has no claim for restitution against the developer because it still has a viable claim against the buyer's estate for payment for the shrubbery.

For all these reasons, the trial court did not err in ruling that Clark's unjust enrichment claim against Occupants failed as a matter of law.

**II.**

The trial court made the alternative ruling that, if its primary basis for deciding that Clark could not recover restitution for unjust enrichment against Occupants was incorrect, then another reason Clark could not recover was because Occupants were sub-tenants who were not in privity of contract with Clark.

On appeal, without citing any cases, Clark contends the court's finding that Occupants were subtenants was clearly erroneous, apparently because there was no written sublease and no evidence of any sublease in any event. It maintains that Occupants were mere trespassers.

Occupants respond that under Maryland law, a sublease can be created orally, that there was a sublease in this case, and that the court's findings in this regard were not clearly erroneous. They assert that the trial court's legal conclusions about the effect of the Lease and the effect of a sub-tenancy were correct and are consistent and complementary.

The rights and duties between a lessor and lessee are two-fold. They are "in privity of estate as long as the landlord-tenant relationship exists" and they also are in privity of contract, "with the terms of the lease defining their rights and obligations[.]" *Italian Fisherman, Inc. v. Middlemas*, 313 Md. 156, 163 (1988). A sublease is a transfer of the lease by the lessee for less than the remainder of the lease term, creating a lessor-lessee relationship between the original lessee and the subtenant. *Id.* (A transfer for the

remainder of the lease term is an assignment. *Id*. at 164.) When there is a sublease, "[t]he original lessee retains both privity of estate and privity of contract with the original lessor and no legal relationship is created between the lessor and the sublessee." *Id*. at 163.

If a lease does not contain a restriction on assigning or subleasing, then it may be freely assigned or sublet. *Julian v. Christopher*, 320 Md. 1, 7 (1990). If it does contain such a restriction, it is enforceable so long as consent is not unreasonably withheld. *Id*. at 11.

A lease may be created orally so long as that is not prohibited by statute or other law and there is evidence to support an intention on the part of the parties to create the lease. *See* Md. Code (1974, 2015 Repl. Vol.), §§ 5-101-5-102 of the Real Property Article ("RP"). That is true of subleases, as they too are leases. When the transfer of a leasehold estate is for a time period not exceeding one year, the statute of frauds does not apply. *See* RP §§ 5-101-5-102.

Here, there was competent and material evidence in the record to support the trial court's finding that Tenant and Occupants entered into an oral sublease of the Premises for three months, so that Occupants were subtenants as opposed to being mere trespassers. Given our determination of Issue I, this makes no difference in the outcome in any event. Whether Occupants were subtenants or trespassers, they were third parties

to the lease between Clark and Tenant, and for the reasons we have explained above,

Clark did not have a legal basis for recovering restitution from them.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**
